Good morning, Your Honors. Tim Warner for Mr. Knockum. I'll reserve two minutes for rebuttal. Okay. Okay. This case presents an interesting question of what happens when the same claim is presented twice in a false claim question, and how does that affect two things. How does that affect the issue of multiplicity? Can someone be convicted more than once if the same claim, in this case the same request for a tax refund, is filed twice? And how does that affect the calculation of the amount of loss? And the answer isn't necessarily the same. No, the answer is not necessarily the same, and I think the two are somewhat independent, maybe somewhat related. Well, do they both turn on his intent? I think that the first issue, the multiplicity issue, I do not think it turns on intent because the court is to look at the statute. In this case, it is the filing of a claim, so I think that the claim is the so-called unit of prosecution in terms of multiplicity. Well, the statute says whoever makes or presents to any person any claim or any department or agency thereof. So I guess the question is whether a claim is the piece of paper and whether making it is sending the piece of paper or whether the claim is the content of the piece of paper. The pieces of paper were the same, right? Right. But they were sent to different people at different times. Right. So they were presented separately. Yes. Separate presentations basically a couple months apart. So why isn't that two things? He presented it twice, even if it was one claim. Our position would be that the focus is on the claim and that there can only be one claim for a refund in relation to the 2007 tax year. And it's the same exact amount. But why is that true? I mean, couldn't — isn't it possible that the two different IRS offices would have both issued a refund? We don't know that. The facts did not confirm that that could actually happen. The judge questioned that, suggested that that wouldn't happen. I think that the facts do not show whether that could actually happen. I think that one issue is legally there could only be one refund. There was only one claim. Well, legally he couldn't get the refund at all. That's how we're here. Well, yes. Legally it was not good. But there was one — he's applying for one refund. It was the same refund twice. So I think — But I guess it doesn't make sense to me to say it's the same refund twice when it's really no refund at all. I mean, he's not entitled to the refund. So we have to put aside whether it's a legitimate refund. And once we do that, I don't understand why it's not two requests for refunds that he may have actually managed to get if the IRS wasn't paying attention. Well, I think that — and you mentioned this at first, too. Is intent — does intent come into play in deciding the issue of can there be two claims when it's the same? And I think — I believe that the government's theory is that it does not come into play and that they're saying it's just a presentation of this claim. And I — Well, what does it mean to present a claim? I mean, why isn't sending it, presenting it? And he did that twice, even if it is the same claim. I guess what I would look at is presenting a claim, it's — the same claim was presented twice. So, again, you have the issue of the same claim, the same thing being given twice. Why are you calling the document a claim? Isn't it a request for a refund? And once he does it, he's made a claim. And when he does it again, he's made another claim. Okay. I mean, I don't think there's anything — is there anything on the document that says this is a claim or something? I mean, I think it helps you to characterize it that way, but I'm not sure it's fair. Well, the cases say that a tax return requesting a refund constitutes a claim under the False Claims Act. So I'm stuck with that. Yes, and it's twice. That's the problem, right? You know, and going back to your original question about the intent, and this is something, as I'm cogitating about this, that I thought of, what if instead of the claims being submitted two months apart, what if it was one refund request filed and then a week later another refund request filed with a letter saying,  Did that happen? Do we have any evidence of that? It did not happen. But my point is this, is that under the government's theory, it's not intent. It's this claim. Under the government's theory, that scenario, that hypothetical could result in two — I believe could result in two convictions. And that scenario is — If there's a cover letter that says this is just a copy of what I did last week, then you're alerting the government to the fact that you're trying to make one request, but you're giving them two copies. But without that, it's a very different thing. You're actually asking for money twice. Okay. Well, that is one way to distinguish it. Essentially, you would be saying that the second one was not another claim. Take out the cover letter. One week apart, the same thing sent to the same IRS office. Under the government's theory, intent doesn't matter, and boom, you could have two convictions for the same thing. Are you going to talk about the amount of loss? Yes. What guideline is governing there? The amount of loss, the basic amount of loss guideline, so it's the intended. I'm sorry? The court is to look at the intended loss or the anticipated loss. Okay. And so what the court did is it added both submissions. So it added that one plus million dollars twice, and it increased the offense level by two if it wasn't done twice. And did he make a finding about the intent? The court did not make a finding. Now, in the court's ---- And did the judge say something at some point about how he was simply trying to make sure that the claim was being dealt with or something? That's true. And that was during, I believe it was during the closing argument phase of the trial. There was a discussion where the judge said, look, you expect me, this is what the judge said, you expect me to find liability for this second claim? This was done out of an abundance of caution. And there was some discussion that ---- But I have a harder time with the ---- It seems to me your argument about the amount of loss is a better point because it does directly turn on intent. Right. And that would require a finding. The government's position is that he submitted these thinking that both of them are going to pay off. You know, hey, we'll submit two. Okay. And there is not a finding from the court that that was the intent. And, in fact, I would suggest that the court's comments during that closing argument would suggest the opposite and would make it improper, I think, for there to be an implied finding. Now, of course, the problem is that there was no challenge to the pre-sentence report. So it's no wonder the judge didn't make a finding. Yeah. Pro se, you know, and, you know, it's a pro se defendant, unrepresented. There was no challenge to the report. So we have the judge's statements in somewhat related context of the multiplicity issue, but we don't have any statements about the amount of loss. So is it intent only or, like, say he thought he was just submitting a copy, but actually the government often screws these things up and gives you two refunds. Isn't the loss calculation based on either of those? So, like, it's either intent or the actual expected loss. That's true. So if the government might screw this up, he's out of luck even if it wasn't his intent? It would be the greater of either the intended loss or the actual loss. In this case, neither one of them paid off. Well, there was no actual loss. So there's no actual loss. So they're saying the intended loss was both of them because, heck, if the government paid both of them, he would have pocketed both of them. Well, if we thought there was a problem here and given that there was no challenge, A, we have a plain error problem, whether it's plain error, and, B, if it were a plain error, wouldn't we remand for a finding because it's no wonder that there wasn't one? That's correct. I think that it would be one where it should go back for a finding because there is an ambiguity here. Okay. Based on the Court's earlier statements, you expect me to find liability. This was done out of an abundance of caution, and that was consistent with Mr. Knockham's testimony about what happened. He gave it first to Austin and then to Fresno based upon some advice from the forums. So I think that there is an ambiguity there that comes into play. I've got 35 seconds, so I'll stop there. Okay. Well, you're fine, and we'll give you a minute of rebuttal. Thank you. Thank you. May it please the Court, my name is Roger Yang, and I represent the United States. Could you talk into the mic a little better? Thank you. Thank you. May it please the Court, my name is Roger Yang, and I represent the United States. This Court should affirm the conviction sentence of Mr. Knockham because, first, the district court properly conducted a forensic colloquy and exercised its discretion not to appoint advisory counsel. Second, the unit of prosecution for a false claim is each making or presenting of the false claim. Third, the district court correctly calculated intended loss under the guidelines. And fourth, the imposition of a consecutive sentence was a proper exercise of the court's discretion to arrive at a substantively reasonable total sentence. So where are you putting your hat on the intent? So where are we going to put our hat on intent? The district court recognized that in order to have a false claim, the defendant has to act with intent to defraud in each unit of prosecution. So when the defendant submitted the claim into the 2007 tax return first to Austin, he formed the intent to defraud the United States and sent that claim. When he didn't receive a payment immediately, he decided and formed the intent again, and necessarily the district court found that he had the intent to defraud the United States. When he -- Well, what about your opponent's hypothetical? Suppose he had sent it in a week later saying, I haven't heard from you, and this is the same claim again, and I'm not trying to get it twice, but I'm just trying to make sure you got it. Again, there are two separate issues. First is whether it's proper to charge and convict the defendant. I don't know. I'm just talking about that for now. Okay. Technically, under the law, he would have presented the claim again. In United States v. Coggins, for example, there was a Civil War pensioner who had a proper or a genuine but fraudulently obtained pension certificate, and he would go to the pension office and present the claim over and over and over, technically the same piece of paper. But the ---- But would he say, I'm just giving you the same copy again because I didn't hear from you? No. So I guess I'm not sure why your answer isn't just, no, that's different. It seems like that has to be different if you're just making very clear this is another copy. The case law and the statute specifically state the making or presenting of the claim. And, yes, it is a second presenting. Whether or not the government would go ahead and charge that second ---- Well, that's never much of an answer because, A, we really can't take that into account in interpreting statute, and, B, my experience is the government often does make charges that one wonders about. That's correct, Your Honor. Including perhaps here. Yes, Your Honor. But the answer is if the defendant had the intent to defraud the United States both times when he ---- But wouldn't a cover letter saying this is just a copy of what I did before, I'm just asking again for the same thing, wouldn't that show there wasn't intent? It would show that he intended on presenting or making that false claim, presuming he knew that it was a false claim that he was presenting again. Okay. So if we move to loss, then, for sentencing, would you treat that differently then with a cover letter? No, Your Honor. Again, with regard to the units of prosecution, the guidelines state that it's the intent, the intent to defraud. So if we have a cover letter that says this is just a duplicate, I'm really only asking for one refund, you're saying the intent for loss for the sentencing guidelines is both? Yes, Your Honor. This Court has repeatedly stated that just because a intended loss doesn't have to be realistic and it doesn't ---- But that's not the question. The question is whether it's intended. But, yes. If the defendant forms the intent to defraud on both occasions and then submits both claims, as he did ---- Yes, Your Honor. Right. So what's the evidence that he intended to get both or a finding that he intended to get both? In this case, Your Honor, the defendant submitted the first claim with a bunch of information regarding sovereign citizens, things from the forums. When he didn't hear, he submitted the second claim without those documents, signed on a different date with no explanation. The other interesting thing is when he submitted the first claim with regard to his ---- But let's back up for a minute. When you answered Judge Friedland, we were talking about the hypothetical, and you still said that that would intend to ---- losses could be added up, right? Yes. Did I misunderstand what you said? Yes, Your Honor. So if I make a claim with you and three days later I go to her and make the same claim, I say, hey, this gentleman over here has not paid me and now I'm recurring to you only because I haven't been paid. That's the example we're talking about, something to show that there was no intent when you made the double filing. The defendant formed the ---- If the defendant forms the intent that I want to defraud you, I intend on defrauding the United States, and presents it to one party and then to another party, the ---- for the purpose of calculating intended loss ---- Don't you have to intend to get both? Don't you have to intend to get paid twice? How else can you add them up? You have to intend to cause a pecuniary harm. And even if it's impossible or improbable for you to cause that harm, under the guidelines ---- That's not the question. Don't you have to ---- In this instance, didn't he have to intend to get paid twice or want to get paid twice, whether he thought he was going to get paid twice? And there's no finding here about whether he did, and there's some finding that he didn't, some suggestion that he didn't. Don't you have that he waited 5 years and that also he filed in another office, not near that one? Yes, Your Honor. Okay. Well? And again, this ---- there's a case from the Eighth Circuit, and it also involves these original issue discount claims. And in that case as well, the defendant sent one tax return to one office and then a second tax return for the same tax year to another office. And the Eighth Circuit affirmed, stating that, yes, the defendant formed the intent to obtain both of those claims even if ---- Okay. And that's possible. But we don't have a finding here. Now, I understand we don't have a finding because he didn't ask for one. And so what do we do with that? I mean, is this not ---- is this not subject to plain error, or do we send it back for a finding? Because you ---- I mean, as you explained, it could be that he intended to get paid twice, but it could also be that he didn't. The government's position is that the defendant formed the intent to obtain both of those claims, and the district court necessarily found that when it convicted him of both counts 2 and 3. Now, the district court ---- So I thought this is what you were saying before. So you're saying in order to convict of both counts, there really was an intent element? Yes, Your Honor. And the statute says knowing. So are you getting ---- where are you getting that idea that there's that intent element? During the Ferretta colloquy, actually, when the government explained the elements of the crime, the district court interposed and specifically said there must be some sort of intent to defraud the United States. And, yes, it needs to be a knowingly false claim, but in addition, there is the underlying ---- it needs to be a false claim to obtain money from the United States. Well, right. But your ---- as I understood your position on the conviction, which seems to make sense, it's that each presentation is a separate ---- whatever ---- whether he intended to get paid once or twice, each presentation is a separate crime. Yes, Your Honor. Right. That doesn't depend on any intent to get paid twice. It just says he made the claim twice. Yes, Your Honor. Whether he intended to get paid twice or not. But as to the loss, it seems to matter whether he intended to get paid twice. The district court, in fashioning this entire sentence, took all of this into account and, in fact, specifically stated that you filed multiple of these claims. Well, he did do that, and he seemed to have the sense, therefore, that he really didn't intend to get paid twice. That's why he bumped it down, right? Yes, Your Honor. And, again, the district ---- But still, we're bound by the rule that he has to do the guidelines right first. Under the guidelines, it is proper for a district court to take into account all the pecuniary harms that the district court finds the defendant intended. In this particular case, the district court necessarily must have found the defendant intended to cause both of the losses and, therefore, convicted him. How do we know that? The district court specifically, in fashioning the entire sentence, not only mentioned that the defendant tried and tried again to cause these losses, but then discussed, well, I'm going to find that, you know, because this is attempted loss, that I am going to vary downward. And so he took ---- But when the PS ---- I didn't look at the presentence report, which is what he adopted. Did it say that he intended to get it twice, or did he say that he ---- or did it just add it up because he sent it in twice? The just ---- the PSR simply noted that it was calculating intended loss and that he submitted the claim twice. Okay.  Thank you very much. Thank you. Thank you. Okay. No. Thank you very much. Thank you both for your arguments. The case of United States v. Knockham is submitted. We'll go to United States v. Newton.
judges: Berzon, Friedland, Dominguez